

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

AUG 1 4 2013

CLERK, U.S. DISTRICT COURT
By _____
Deputy

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| LARRY ADAMS, | § | |
| PLAINTIFF, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. |
| | § | 4:12-CV-00490-A |
| | § | |
| CAROLYN W. COLVIN, | § | |
| ACTING COMMISSIONER OF SOCIAL | § | |
| SECURITY, | § | |
| DEFENDANT. | § | |

## FINDINGS, CONCLUSIONS AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE
## AND
## NOTICE AND ORDER

This case was referred to the United States Magistrate Judge pursuant to the provisions of

Title 28, United States Code, Section 636(b). The Findings, Conclusions and Recommendation

of the United States Magistrate Judge are as follows:

## FINDINGS AND CONCLUSIONS

### I.    STATEMENT OF THE CASE

Plaintiff Larry Adams ("Adams") filed this action pursuant to Sections 405(g) and

1383(c)(3) of Title 42 of the United States Code for judicial review of a final decision of the

Commissioner of Social Security denying his claims for a period of disability and disability

insurance benefits under Title II and supplemental security income ("SSI") under Title XVI of

the Social Security Act ("SSA"). In June 2007, Adams applied for disability insurance benefits

and SSI alleging that he became disabled on October 1, 2006. (Transcript ("Tr.") 18; *see* Tr. 89-

1

92, 96, 200-16.)  The ALJ held a hearing on May 13, 2009 and issued a decision on July 20, 2009 that Adams was not disabled.  (Tr. 18, 34-65, 93-103.)  Adams filed a written request for review, and the Appeals Council, on May 28, 2010, issued an order vacating the ALJ's July 2009 decision and remanded the case to the ALJ for further administrative proceedings.  (Tr. 18, 104-108.)  The ALJ held a second hearing on December 2, 2010 and issued a decision on January 26, 2011 that Adams was not disabled.  (Tr. 18-29, 66-88.).

## II.   STANDARD OF REVIEW

Disability insurance is governed by Title II, 42 U.S.C. § 404 *et seq.*, and SSI benefits are governed by Title XVI, 42 U.S.C. § 1381 *et seq.*, of the SSA.  In addition, numerous regulatory provisions govern disability insurance and SSI benefits.  *See* 20 C.F.R. Pt. 404 (disability insurance); 20 C.F.R. Pt. 416 (SSI).  Although technically governed by different statutes and regulations, "the law and regulation governing the determination of disability are the same for both disability insurance benefits and SSI." *Greenspan v. Shalala*, 38 F.3d 152, 154 (5th Cir. 1999).

The Social Security Act defines a disability as a medically determinable physical or mental impairment lasting at least twelve months that prevents the claimant from engaging in substantial gainful activity.  42 U.S.C. §§ 423(d), 1382c(a)(3)(A); *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999).  To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed.  20 C.F.R. §§ 404.1520, 416.920.

First, the claimant must not be presently working at any substantial gainful activity.  Substantial gainful activity is defined as work activity involving the use of significant physical or

mental abilities for pay or profit.  20 C.F.R. §§ 404.1527, 416.972.  Second, the claimant must have an impairment or combination of impairments that is severe.  An impairment or combination of impairments is not severe if it has such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work.  20 C.F.R. §§ 404.1520(c), 416.920(c); *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985), *cited in Loza v. Apfel*, 219 F.3d 378, 392 (5th Cir. 2000).  Third, disability will be found if the impairment or combination of impairments meets or equals an impairment listed in the Listing of Impairments ("Listing"), listed in the appendix to the regulations.  20 C.F.R. §§ 404.1520(d), 416.920(d). Fourth, if disability cannot be found on the basis of the claimant's medical status alone, the impairment or impairments must prevent the claimant from returning to his past relevant work. *Id.* §§ 404.1520(e), 416.920(e).  And fifth, the impairment must prevent the claimant from doing any work, considering the claimant's residual functional capacity, age, education, and past work experience.  *Id.* §§ 404.1520(f), 416.920(f); *Crowley v. Apfel,* 197 F.3d 194, 197-98 (5th Cir.1999).

At steps one through four, the burden of proof rests upon the claimant to show he is disabled. *Crowley,* 197 F.3d at 198.  If the claimant satisfies this responsibility, the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments.  *Id.*  If the Commissioner meets this burden, the claimant must then prove that he cannot, in fact, perform the work suggested.  *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002).

3

A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). It is more than a mere scintilla, but less than a preponderance. *Id.* A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Id.* This Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's, but will carefully scrutinize the record to determine if the evidence is present. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Hollis*, 837 F.2d at 1383.

### III.   ISSUES

In his brief, Adams presents the following issues:

1. Whether the ALJ's residual functional capacity ("RFC") decision is supported by substantial evidence;

2. Whether the ALJ properly evaluated Adams' credibility;[1] and

3. Whether the ALJ properly explained the weight given to the assessment of the state agency medical consultant ("SAMC").

(Plaintiff's Brief ("Pl.'s Br.") at 1, 7-13.)

### IV.   ALJ DECISION

---

[1] The Court notes that Adams, in his brief, analyzed this issue as part of the issue number one. The Court, however, separates the issue regarding credibility for ease of analysis.

In his January 26, 2011 decision, the ALJ performed the five-step sequential evaluation process for determining whether a person is disabled. (Tr. 18-29.) The ALJ noted that Adams met the disability insured status requirements under Title II of the SSA from October 1, 2006, the alleged onset date of disability. (Tr. 19.) He stated that Adams had not engaged in any substantial gainful activity since October 1, 2006. (*Id.*) The ALJ further found that Adams had the following severe combination of impairments: "diabetes mellitus that [was] currently insulin-dependent, diabetic neuropathy in his feet, hypertension, degenerative changes in his lumbosacral spine, hyperlipidemia, mild bilateral carpal tunnel syndrome ("carpal tunnel"), post-traumatic stress disorder, dysthymic disorder, and major depressive disorder." (*Id.*; *see* Tr. 19-23.)

Next, the ALJ held that none of Adams' impairments or combination of impairments met or equaled the severity of any impairment in the Listing. (Tr. 19.) As to Adams' residual functional capacity ("RFC"), the ALJ stated:

> The claimant has the ability to obtain, perform, and maintain the following residual functional capacity: lift and carry fifty pounds occasionally and twenty-five pounds frequently; sit, stand, and walk (individually or in combination) throughout an eight-hour workday; and otherwise perform the full range of medium work as defined at 20 C.F.R. §§ 404.1567(c) and 416.967(c), except: he cannot climb ladders, ropes, or scaffolds; he can occasionally stoop, kneel, and crouch; and he can perform jobs involving detailed, but not complex, instructions.

(Tr. 27.) The ALJ opined, based on his RFC assessment and other findings, that Adams was not able to perform his past relevant work. (Tr. 23-28.) However, the ALJ found that there were a significant number of jobs in the national economy that Adams could perform; thus, he was not disabled. (Tr. 27-29.)

# V.   DISCUSSION

## A.  RFC Determination

Adams argues that the ALJ's RFC determination is not supported by substantial evidence because the ALJ ignores the objective medical evidence in the record.  (Pl.'s Br. at 7.)  Adams claims that the ALJ erred by failing to include any limitations in the RFC determination that reflected Adams' limitations involving his hands.  (Pl.'s Br. at 7.)  Specifically, Adams states:

> The ALJ discounts the EMG study performed in August 2010.  The EMG reveals evidence of bilateral median motor neuropathy.  While the ALJ recites these findings he is quick to point out that the physician who performed the test states that the findings are equivocal.  The ALJ also points out that there is no evidence of any cervical degenerative disc disease that would account for those symptoms.  While it is true that the clinician notes the findings are equivocal, he also notes that clinical correlation should be evaluated.
>
> The ALJ's analysis of the impairment and non-inclusion of any limitation in the residual functional capacity is flawed as first he misstates the evidence.  Contrary to the ALJ's assertion there is objective medical evidence of cervical involvement that could cause his hand problems. On September 21, 2004, Adams underwent a cervical ultrasound.  The testing revealed "myositis/fasciitis" at C4-C5 bilaterally and bot trapezii.  While Adams cannot speculate what exactly such findings mean, a statement that there is no objective evidence of cervical involvement, as suggested by the ALJ, is simply unfounded.  Furthermore, as stated by the EMG study, a clinical correlation should be given to the complaints of wrist pain.  Adams' clinical findings are consistent with such.  He has had positive Tinels's [sic] signs and has complained of pain and difficulty using his hands.

(Pl.'s Br. at 7-8 (internal citations omitted).)

The Defendant, on the other hand, argues that Adams is mistaken as to the ALJ's consideration of the evidence.  Specifically, the Defendant states:

> The ALJ considered that Adams complained of hand numbness up to his wrist[;] . . . recognized that electromyogram (EMG) testing was consistent with mild carpal tunnel syndrome bilaterally[;] . . . that physical examinations revealed positive

Tinel's and Phalen's signs bilaterally[;] . . . [and] found Adams' mild carpal tunnel syndrome to be a severe impairment.   Thus, the ALJ recognized and considered the objective evidence regarding Adams' carpal tunnel syndrome and gave that evidence some weight.

(Defendant's Brief ("Def.'s Br.") at 4-5.)

RFC is what an individual can still do despite his limitations.[2]   SSR 96-8p, 1996 WL 374184, at *2 (S.S.A. July 2, 1996).   It reflects the individual's maximum remaining ability to do sustained work activity in an ordinary work setting on a regular and continuing basis.   *Id.*; *see Myers v. Apfel,* 238 F.3d 617, 620 (5th Cir. 2001).   A regular and continuing basis is an eight-hour day, five days a week, or an equivalent schedule.   SSR 96-8p, 1996 WL 374184, at *2.   RFC is not the least an individual can do but the most.   *Id.*   The RFC is a function-by-function assessment, with both exertional and nonexertional[3] factors to be considered, and is based upon all of the relevant evidence in the case record.   *Id.* at 3-6.   The responsibility for determining a claimant's RFC lies with the ALJ.   *See Villa v. Sullivan*, 895 F.2d 1019, 1023-24 (5th Cir. 1990).   The ALJ must discuss the claimant's ability to perform sustained work activity on a regular and continuing basis and resolve any inconsistencies in the evidence.   SSR 96-8p, 1996 WL 374184, at *7.

---

[2] The Commissioner's analysis at steps four and five of the disability evaluation process is based on the assessment of the claimant's RFC.   *Perez v. Barnhart*, 415 F.3d 457, 461-62 (5th Cir. 2005).   The Commissioner assesses the RFC before proceeding from step three to step four.   *Id.*

[3] Exertional capacity addresses an individual's ability "to perform each of seven strength demands: Sitting, standing, walking, lifting, carrying, pushing, and pulling."   Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *5.   Each function must be considered separately, but the final RFC assessment may combine activities.   *Id.* Nonexertional capacity "considers all work-related limitations and restrictions that do not depend on an individual's physical strength," including mental limitations.   *Id.* at *6.

In making an RFC assessment, the ALJ must consider all symptoms, including pain, and the extent to which these symptoms can be reasonably accepted as consistent with objective medical evidence and other evidence. *See* 20 C.F.R. §§ 404.1529, 416.1529, 416.929; SSR 96-7p, 1996 WL 374186, at *1 (S.S.A. July 2, 1996); SSR 96-8p at *5. The ALJ must also consider limitations and restrictions imposed by all of an individual's impairments, even impairments that are not severe. *Id.* The ALJ is permitted to draw reasonable inferences from the evidence in making his decision, but the social security ruling also cautions that presumptions, speculation, and supposition do not constitute evidence. *See, e.g.*, SSR 86-8, 1986 WL 68636, at *8 (S.S.A. 1986), *superseded by* SSR 91-7C, 1991 WL 231791, at *1 (S.S.A. Aug. 1, 1991) (only to the extent the SSR discusses the former procedures used to determine disability in children). The ALJ is not required to incorporate limitations in the RFC that he did not find to be supported in the record. *See Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991) ("The ALJ as factfinder has the sole responsibility for weighing the evidence and may choose whichever physician's diagnosis is most supported by the record.")

In reviewing the ALJ's decision, a finding of no substantial evidence is appropriate only if no credible evidentiary choices support the decision. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 1995). In this case, the ALJ ultimately determined that Adams was not disabled because there were a significant number of jobs in the national economy that Adams could perform when considering his age, education, work experience, and RFC. (Tr. 28-29.) Before coming to this conclusion, the ALJ found, as noted above, that Adams had the RFC to "lift and carry fifty pounds occasionally and twenty-five pounds frequently; sit, stand, and walk (individually or in

combination) throughout an eight-hour workday; and otherwise perform the full range of medium work . . . except: he cannot climb ladders, ropes, or scaffolds; he can occasionally stoop, kneel, and crouch; and he can perform jobs involving detailed, but not complex, instructions." (Tr. 27.)

In making his RFC and disability determination the ALJ relied, *inter alia*, on the following evidence in the record: (1) an August 2007 consultative internal examination in which William Bosworth, M.D. ("Dr. Bosworth"), reported that Adams "had normal hand and wrist function" and that his "musculoskeletal system was completely normal, including his ability to heel, toe, and tandem walk and to perform fine and dexterous finger control" (Tr. 20; *see* Tr. 381); (2) an August 2008 examination in which Adams complained of pain in his hand joints and wrist splints were ordered but there was no evidence of joint inflammation (Tr. 21; *see, e.g.*, Tr. 512, 514); (3) an August 2010 examination in which Thiru M. Annaswamy, M.D. ("Dr. Annaswamy"), noting that "EMG testing was abnormal and consistent with mild carpal tunnel syndrome bilaterally," recommended that Adams wear wrist splints at night and during heavy hand activities for carpal tunnel symptoms and opined that his findings were "equivocal but suggested mild bilateral carpal tunnel syndrome" (Tr. 21; *see* Tr. 644-45); (4) Adams' testimony regarding the issues he had with his hands, fingers, and wrists (Tr. 20-26); (5) evidence in the record that Adams engaged "in a wide range of activities of daily living despite his symptoms, including housework, grocery shopping, cooking, meal preparation, and the laundering" and that Adams "has been independent in personal grooming, personal hygiene, and dressing." (Tr. 26; *see* Tr. 75-87, 267-271, 379-380, 390, 405.)

As to Adams' carpal tunnel, the ALJ specifically stated the following:

[T]he diagnostic and clinical findings regarding carpal tunnel syndrome are equivocal. At most, he has mild carpal tunnel syndrome, which is not consistent with the degree of symptoms and limitations he has alleged secondary thereto. Mr. Adams testified he has been advised to wear wrist splints all of the time. However, he was told to wear them only at night and during heavy hand activities as tolerated.

. . . .

From an evidentiary standpoint, Mr. Adams' actual functioning is the *sine qua non* evidence that belies any allegations to the contrary. Stated otherwise, the actual performance of the activities of daily living trumps any inconsistent claims as to functional incapacity. I note again that the claimant has not been fully compliant with prescribed treatment, which suggests he believes his impairments are not significantly limiting. Compliance with prescribed treatment is a condition precedent to being found disabled. 20 C.F.R. §§ 404.1530 and 416.930.

In this case, the objective findings on physical examination and diagnostic studies establish Mr. Adams is somewhat limited secondary to his physical impairments.

(Tr. 26.)

The focus of Adams' argument appears to be that the ALJ's RFC determination is not supported by substantial evidence because the ALJ misstated the evidence, including the EMG performed in August 2010, or ignored certain evidence, including the September 21, 2004 cervical ultrasound. (*See, e.g.*, Pl's Br. at 7-8.) However, procedural perfection in administrative proceedings is not required as long as the substantial rights of a party have not been affected. *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007) (stating that ALJ's omission does not require remand unless it affected claimant's substantial rights). The ALJ's decision is not subject to reversal, even though there may be substantial evidence in the record that would have supported the opposite conclusion, because substantial evidence also supports the conclusion that was

reached by the ALJ. *See Dollins v. Astrue*, 2009 WL 1542466, at *5 (N.D. Tex. June 2, 2009) (citing *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997) and *Steed v. Astrue*, 524 F.3d 872, 874 (8th Cir. 2008)).

In this case, although the ALJ's written findings are not perfect, the ALJ ultimately determined, based on substantial evidence in the record, that Adams had the RFC to perform medium work. Contrary to Adams' claims, the ALJ clearly considered Adams' hand limitations in making such a determination and discussed medical evidence, including the August 2010 EMG, and other evidence in the record relating to Adams' hands and carpal tunnel. As to the September 2004 cervical ultrasound, although the ALJ did not specifically discuss this medical evidence,[4] Adams has not presented any evidence indicating how he was prejudiced by such failure. In fact, Adams admits that he "cannot speculate what exactly such findings [in the 2004 cervical ultrasound] mean." (Pl.'s Br. at 8.) The ALJ adequately explained the reasoning for his RFC determination and for giving less weight to certain evidence, and exercised his responsibility as factfinder in weighing the evidence and in choosing to incorporate limitations into his RFC assessment that were most supported by the record. *See Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991) ("The ALJ as factfinder has the sole responsibility for weighing the evidence and may choose whichever physician's diagnosis is most supported by the record.") Because there is substantial evidence in the record that supports the ALJ's disability determination, the Court concludes that remand is not required.

---

[4] Although the ALJ did not specifically reference the 2004 cervical ultrasound, the ALJ did indicate that he had reviewed the materials in Exhibit 1F, which is where the medical records containing the 2004 cervical ultrasound were located in the record. (*See* Tr. 20, 326.)

### B.  Whether the ALJ properly evaluated Adams' credibility

In his brief, Adams argues, in essence, that the ALJ made a flawed credibly determination and failed to properly evaluate his credibility pursuant to the requirements set forth in SSR 96-7p.  (Pl.'s Br. at 8.)  Specifically, Adams states the following:

> First[,] the ALJ states that there are objectively identifiable medical impairments to explain **some** of his pain or other subjective complaints.  (R. at 23.)  This analysis begs the question—what allegations are reasonably explained?  The Claimant and this Court, subsequent reviewers, are meant to guess at what this must mean.  This statement leads to a patent ambiguity in the ALJ's findings.  In one hand[,] the ALJ felt that Adams' carpal tunnel syndrome was a severe impairment[;] thus[,] causing some limitation on his ability to perform work activities[.]  [O]n the other hand[,] he did not include a limitation for such in the [RFC].

(Pl.'s Br. at 9 (emphasis in original).)  Adams also argues that the ALJ's credibility finding is also flawed at the second step of the credibility evaluation because the ALJ, in essence, either misstates the evidence or makes ambiguous statements regarding the evidence.  (Pl.'s Br. at 10-11.)

In evaluating a claimant's subjective complaints, the ALJ first considers whether there is a medically determinable impairment that could reasonably be expected to produce the claimant's pain or other symptoms.  20 C.F.R. §§ 404.1529(b), 416.929(c); SSR 96-7p, 1996 WL 374186, at *2 (S.S.A. July 2, 1996).  Once the impairment is found, the ALJ evaluates the intensity, persistence and limiting effects of the symptoms on the claimant's ability to do basic work activities.  20 C.F.R. §§ 404.1529(c), 416.9229(c); SSR 96-7p, 1996 WL 374186, at *2.  A claimant's testimony must be consistent with the objective medical evidence and other available evidence.  20 C.F.R. §§ 404.1529, 416.529.  When assessing the credibility of an individual's

statements, the ALJ considers, in addition to the objective medical evidence, the following: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, which the claimant receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the claimant uses or has used to relieve pain or other symptoms; and (7) any other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.529(c)(3); SSR 96-7p, 1996 WL 374186, at *3.

In all cases in which pain or other symptoms are alleged, the administrative decision must contain a thorough discussion and analysis of the objective medical and other evidence, including the individual's complaints of pain or other symptoms and the adjudicator's own observations. SSR 95-5p, 1995 WL 670415, at *2 (S.S.A. Oct. 31, 1995). A claimant's statements about pain and other symptoms are not conclusive evidence of disability, but must be accompanied by medical signs and findings of a medical impairment that could reasonably be expected to produce the pain or other symptoms alleged and that would lead to the conclusion that an individual is disabled. 42 U.S.C. § 423(d)(5)(A). An ALJ's unfavorable credibility evaluation will not be upheld on judicial review where the uncontroverted medical evidence shows a basis for the claimant's complaints unless the ALJ weighs the objective medical evidence and articulates reasons for discrediting the claimant's subjective complaints. *Abshire v.*

*Bowen*, 848 F.2d 638, 642 (5th Cir. 1988); *see Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994).

In this case, the ALJ did make a formal credibility determination. In his decision, the ALJ stated, the "claimant has objectively identifiable, medically determinable impairments that reasonably can be expected to produce some of the pain and other subjective complaints he alleges." (Tr. 23.) The ALJ further opined that Adams' "allegations regarding his level of pain, subjective complaints, and functional limitations are not fully credible or reasonably supported by the findings of the objective medical evidence or the inferences therefrom." (Tr. 23.) The ALJ further stated that Adams' "credibility is eroded not only by the failure of the objective evidence to support the degree of limitation and symptoms he has alleged, but also by his own reports as to his activities and capabilities." (Tr. 26.) In fact, the ALJ specifically recognized that Adams "may experience some degree of pain and some functional loss due to his impairments." (Tr. 25.) The ALJ stated, "However, even moderate levels of pain and functional loss are not, in and of themselves, incompatible to maintain the exertional and nonexertional requirements of work-related activities on a consistent, sustained basis." (Tr. 25.) The ALJ found that "neither the objective medical evidence, the allegations of Mr. Adams, nor the other evidence establishes the claimant is so limited as to be found disabled." (*Id.*)

It is also clear from the ALJ's decision that he properly explained his credibility determination and considered the factors set forth in 20 C.F.R. §§ 404.1529 and 416.929 in making such a determination. To begin with, the ALJ acknowledged that he had a duty to consider Adams' "subjective complaints in compliance with the criteria found in 20 CFR §§

404.1529 and 416.929, and Social Security Ruling 96-7p." (Tr. 23.) As to factors one and seven

of the factors set forth in 20 C.F.R. §§ 404.1529(c) and 416.529(c), the ALJ reviewed Adams'

daily activities, noting that Adams testified, *inter alia*, to "engaging in a wide range of activities

of daily living despite his symptoms, including housework, grocery shopping, cooking, meal

preparation, and laundering." (Tr. 26.) In addition, the ALJ noted that Adams testified that he

had been "independent in personal grooming, personal hygiene, and dressing[, and]. . . is capable

of memorizing telephone numbers, using a telephone directory, and using public transportation

independently." (*Id.*) Moreover, the ALJ noted that Adams "has been able to walk daily up to

three miles for exercise, . . . has helped his daughter care for a horse, . . . has trained others to

ride[,] . . .[and] started attending church." (*Id.*)

As to factors two and three, the ALJ acknowledged, *inter alia*, that Adams: (1) testified to

suffering from wrist pain he rated as a three out of ten (*id.* at 20); (2) complained of "bilateral

knee pain and frequent locking, bilateral wrist pain, and back pain to his left lower extremity"

(*id.* at 21); (3) does not think that he could do computer technician work now because he has

"poor control in his fingers, and he would have problems writing and documenting while doing

technical support" (*id.* at 24); (4) claims that certain objects are difficult for him to hold and that

his hand and wrist pain, being a "three to seven overall," causes him to drop these objects (*id.*);

(5) reported that his "back and hands were his biggest problems in functioning on the keyboard"

and his "hand, wrist, and back pain seem to be the worst, depending on what he is doing" (*id.*);

and (6) testified that: (a) his carpal tunnel makes him drop items, (b) he has lost his grip strength,

(c) he has a constant numbness, and (d) his pain is a two to three most of the time but flares up to a ten twice per month.  (Tr. 25.)

As to factor four, the ALJ recognized that Adams was taking a wide variety of medications, including Trazadone to help with sleep, Citalopram for his depression, Celexa, and Wellbutrin.  (Tr. 24.)  As to factors five and six, the ALJ noted, *inter alia*, that Adams participated in physical therapy, attends PTSD support groups and Narcotics Anonymous, wears wrist splints, lies down and constantly changes positions to relieve pain, and waits until night time to go to the store in order to avoid people.  (Tr. 24-25.)  In addition the ALJ noted that Adams admitted that years ago he had used drugs to treat his pain when medical help was unavailable.  (*Id.* at 24.)  Because the ALJ properly went through the factors in evaluating Adams' credibility and adequately explained the weight he assigned to Adams' subjective complaints based on a thorough review of the other evidence in the record, the Court concludes that the ALJ did not err in evaluating Adams' credibility.   Consequently,   remand   is   not required.[5]

As to Adams' claim that it was ambiguous for the ALJ to find, at Step Two, that Adams' carpal tunnel was severe, but then "not include a limitation for such in the [RFC]" (*see* Pl.'s Br. at 9, 11), the court notes, however, that "having a severe impairment is not a sufficient condition for receiving benefits under the Secretary's regulations."  *Shipley v. Sec. of Health & Human Servs.*, 812 F.2d 934, 935 (5th Cir. 1987)   Instead, a finding of severity at Step Two "means

---

[5] The Court notes that Adams takes issue with several statements the ALJ made in his credibility determination, claiming that such statements did not relate to Adams' back problems or to his carpal tunnel.  (*See, e.g.*, Pl.'s Br. at 6.)  However, the ALJ's credibility analysis is to encompass Adams' credibility as a whole and relates to *all* of Adams' alleged impairments that could reasonably be expected to produce Adams' pain or other symptoms.

only that claimant has passed the second step of the inquiry mandated by the regulations." *Id.* In

other words, the consideration of whether a claimant's impairments are severe at Step Two is a

different inquiry than the ALJ's assessment of the claimant's RFC. *See Gutierrez v. Barnhart*,

No. 04-11025, 2005 WL 1994289, at *9 (5th Cir. Aug. 19, 2005) ("A claimant is not entitled to

social security disability benefits merely upon a showing that she has a severe disability. Rather,

the disability must make it so the claimant cannot work to entitle the claimant to disability

benefits."); *Boyd v. Apfel*, 239 F.3d 698, 706 (5th Cir. 2001) ("The ALJ's finding that [the

claimant] had a residual functional capacity to perform a range of light work, and is not

necessarily inconsistent with that finding."); *Quigley v. Astrue*, No. 4:09-CV-402-A, 2010 WL

5557500, at *8 (N.D. Tex. Sept. 8, 2010).[6]

---

[6] The Court notes that there are several cases that have found that the ALJ erred in failing to include any limitations in the RFC determination for impairments found to be severe at Step Two. However, the facts in those cases are distinguishable from the instant case. In *Norman v. Astrue*, No. SA-10-CA-849-XR, 2011 WL 2884894, at *5 (W.D. Tex. July 18, 2011), the court stated, "The ALJ's inexplicable omission of the [obstructive sleep apnea ("OSA")] from the RFC analysis in step 4 is contradicted by the determination of the OSA being 'severe' in step 2." In *Norman*, the Court focused on the fact that there was no medical evidence to support the conclusion that Norman's symptoms resulting from his severe OSA had completely disappeared with treatment. Instead, the Court noted that all the medical evidence indicated that the claimant's severe OSA limited his ability to sustain gainful employment. However, in this case, there is no unequivocal medical evidence indicating what limits, if any, Adams' carpal tunnel placed on his ability to sustain gainful employment.

Furthermore, in *Martinez v. Astrue*, No. 2:10-CV-0102, 2011 WL 4128837, at *7 (N.D. Tex. Sept. 9, 2011), the Court found that "the failure of the ALJ to include, in the RFC assessment, any limitation as a result of the reattachment surgery he found to be a severe impairment and which he further found causes '*significant limitation' in plaintiff's ability to work* . . . , requires that this case be remanded for clarification of this issue.'" *Id.* (emphasis in original). In reaching this determination, the Court noted that the ALJ erred by failing to offer some explanation as to how the claimant could suffer from a severe impairment but such severe impairment would not have had any limitation on plaintiff's ability to handle objects or pose other manipulative limitations that would affect the jobs identified by the VE. *Id.*

In this case, based on the "equivocal" medical evidence in the record regarding Adams' carpal tunnel syndrome and Adams' testimony, the ALJ decided to include Adams' carpal tunnel as a severe impairment at Step Two. However, based on the lack of any unequivocal medical evidence in the record showing that Adams' carpal tunnel functionally impaired his ability to work and the evidence regarding Adams' actual performance of activities of daily living, the ALJ ultimately concluded in the RFC determination that no limitations regarding Adams' carpal

C. **Whether the ALJ properly explained the weight given to the SAMC's assessment**

Adams also argues that the ALJ erred by failing to properly explain the weight given to the opinions of the State Agency Medical Consultants ("SAMC"). (Pl.'s Br. at 12.) Adams claims that the SAMC opinions that were rendered in September 2007 and January 2008 supported the ALJ's RFC determination that Adams could perform medium work and that the "ALJ failed to state or explain what weight he gave those opinions presenting legal error." (*Id.*) Adams further asserts that the "Commissioner will argue that[,] although he did not mention the State Agency findings, the ALJ surely considered them given the fact that the ALJ came to the same finding of a medium RFC." (Pl.'s Br. at 12.) Adam further claims that "[i]f this is the case, then the reliance is flawed given the [old] age of the opinions." (*Id.*) Specifically, Adams is concerned about any reliance on the SAMC opinions because they both predate a 2010 carpal tunnel diagnosis and a 2010 EMG study, and that, in light of the medical evidence from 2010, the ALJ "would have had to explain his non-inclusion of limitations concerning the hands." (Pl.'s Br. at 13.) Defendant, on the other hand, argues that Adams is mistaken in his claim because the ALJ expressly stated and explained his reliance on the SAMC opinions. (Def.'s Br. at 9-10.)

Findings of fact made by state agency medical and psychological consultants regarding the nature and severity of an individual's impairments are treated as expert opinion evidence

---

tunnel were necessary beyond the fact that he was limited to the performance of medium work with certain limitations. Unlike the ALJ in the *Martinez* case, the ALJ in this case explained his findings regarding Adams' carpal tunnel.

(from non-examining sources) at both the administrative hearing and the Appeals Council levels of administrative review. 20 C.F.R. §§ 404.1527(e), 416.927(e); SSR 96-6p, 1996 WL 374180, at *2-4 (S.S.A. July 2, 1996). Pursuant to SSR 96-6p, the ALJ and the Appeals Council are not bound by the state agency physician's opinions, but may not ignore them and must explain the weight given to these opinions in their decisions. SSR 96-6p, 1996 WL 374180, at *2.

In this case, the ALJ did acknowledge his obligation under SSR 96-6p when he stated that he "must consider the opinions of the State agency medical consultants who evaluated this issue at the initial and reconsideration levels of the administrative review process, pursuant to 20 C.F.R. §§ 404.1527 and 416.927, and Social Security Ruling 96-6p."[7] (Tr. 19.) In his opinion, the ALJ further stated "I generally concurred with the [SAMCs] in their assessments of mental and physical functioning, except I found that Mr. Adams can sit, stand, and walk, whether individually or in combination, throughout an eight-hour workday. Therefore, I afforded great weight to the prior determinations." (*Id.* at 20)

Contrary to Adams' claims, the RFC did specifically discuss the SAMCs' opinions and explain that he was giving them "great weight." (Tr. 20.) In addition, the ALJ clearly considered the more recent medical evidence from 2010 regarding Adams' carpal tunnel. (*See* Tr. 21.) The responsibility for determining the RFC falls to the ALJ. *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995). As noted above, the ALJ properly discussed the evidence in the record in making his RFC determination, explained the reasoning for his RFC determination, and exercised his responsibility as factfinder in weighing the evidence and in choosing    to

---

[7] The Court notes that the ALJ made this statement in connection with Step Three. However, this does not limit its applicability to all relevant sections of the ALJ's decision.

19

incorporate limitations into his RFC assessment that were most supported by the record. Because the ALJ properly discussed the SAMCs' opinions and explained the weight he was giving them in compliance with the applicable regulations and SSRs, remand is not required.

## RECOMMENDATION

It is recommended that the Commissioner's decision be affirmed.

### NOTICE OF RIGHT TO OBJECT TO PROPOSED
### FINDINGS, CONCLUSIONS AND RECOMMENDATION
### AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions, and recommendation within fourteen (14) days after the party has been served with a copy of this document.  The United States District Judge need only make a de novo determination of those portions of the United States Magistrate Judge's proposed findings, conclusions, and recommendations to which specific objection is timely made.  *See* 28 U.S.C. § 636(b)(1).  Failure to file by the date stated above a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Services Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

## ORDER

Under 28 U.S.C. § 636, it is hereby **ORDERED** that each party is granted until **August 28, 2013** to serve and file written objections to the United States Magistrate Judge's proposed

findings, conclusions and recommendation.  It is further **ORDERED** that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further **ORDERED** that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED August 14, 2013.

JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE

JLC/knv